UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH A. STARLING,

       Plaintiff,

v.

       Case No. 1:15-cv-827
       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff alleged a disability onset date of January 12, 2011. PageID.238. Plaintiff identified her disabling conditions as bipolar disorder, psychotic issues, post traumatic stress disorder (PTSD), self-harm, blood disorder, fatigue, depression, low reading and writing skills, attention deficit disorder (ADD), trouble sleeping and forgetfulness. PageID.252. She has a limited education (completed the ninth grade) and previous employment as temporary line worker, a cashier, an assembly line worker, and a recycler. PageID.254. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 28, 2014. PageID.41-52. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of May 15, 2012. PageID.43. At the second step, the ALJ found that plaintiff had severe impairments of chronic anemia, major depressive disorder, bi-polar disorder, and polysubstance abuse. *Id.*[1] At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44.

The ALJ decided at the fourth step that "the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except performing only simple, routine, repetitive tasks in a work environment free of fast paced production requirements with few if any work place changes." PageID.45. The ALJ also found that plaintiff had no past relevant work. PageID.51.

---

[1] In reaching the determination, the ALJ noted that plaintiff had filed a previous claim for benefits based upon a single severe impairment:

> I note that the prior administrative law judge decision dated January 13, 2010 found the sole severe impairment was anemia. She declined to find the claimant's alleged "anger" as severe due to a lack of substantial evidence. She also declined to find a substance abuse impairment for essentially the same reason. More recently, the claimant has sought additional mental health care that has revealed a definitive substance abuse disorder.

PageID.44. The ALJ later stated that the 2010 determination that plaintiff could perform a full range of sedentary work was "only partially binding" due to the "emergence of additional impairments." PageID.49.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary exertional jobs in the national economy. PageID.51-52. Specifically, the ALJ found that plaintiff could perform unskilled, sedentary work in the region (defined as the State of Michigan) and the nation as either an office clerk or machine tender, of which there is an aggregate of 5,000 jobs within the regional economy and 175,000 within the national economy. PageID.51. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since May 15, 2012, the date the application for SSI was filed. PageID.52.

### III. ANALYSIS

Plaintiff raised four issues on appeal.

    **A.**     **The ALJ's decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of Plaintiff's treating psychiatrist, as required by 20 C.F.R. §416.927(c) and (d).**

    **B.**     **The ALJ failed to address factors such as, but not limited to, the length of treatment, frequency of examination, the nature and extent of the treatment relationship, Dr. Verma's specialty as a psychiatrist, and constant adjustments to Plaintiff's medications when he rejected the findings and opinion of Plaintiff's treating psychiatrist, as required by 20 C.F.R. §§416.927(c).**

    **C.**     **Had the ALJ given proper weight to the treating physician's opinion that Ms. Starling would likely miss more than three days of work per month, she should have been found disabled based on the VE testimony that missing one day a month on a sustained basis, or up to 2.5 days for several months, would be work preclusive.**

5

Plaintiff contends that the ALJ failed to properly evaluate the opinions of treating psychiatrist Mauli Verma, M.D. regarding the amount of time that plaintiff would miss work, and, if the ALJ had properly weighed those opinions, this impairment would be work preclusive. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v.*

*Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The record reflects that Dr. Verma was reluctant to render an opinion in this matter. The ALJ explained in detail the process by which the doctor ultimately gave two opinions:

> The record also contains a number of opinion statements from Dr. Verma. The record reveals that the claimant's attorney has tried repeatedly to convince Dr. Verma to opine that the claimant is disabled regardless of her extensive substance abuse problems. In a handwritten note dated October 4, 2013, Dr. Verma speculated that the claimant will benefit from having disability (Ex B14F/l). On November 4, 2013, [plaintiff's attorney] wrote to me that Dr. Verma was reluctant to offer a more specific opinion about the claimant's functional capacity given her prior obfuscation about her substance abuse and the lack of sufficient time of proven abstinence. He asked for additional time to allow Dr. Verma to be convinced. (Ex B18E) Another letter dated November 15, 2013 again cited the need for additional time before Dr. Verma could formulate an opinion (Ex B19E).
>
> Under cover of a letter dated December 5, 2013, [plaintiff's attorney] submitted more specific opinions of Dr. Verma. His letter elaborates his belief that Dr. Verma is basing her opinion on evidence rather than the claimant's assertions. He also noted that it was clear that Dr. Verma would have preferred to wait until the claimant had been proven to be abstinent and sober for 12 months before opining about her mental capacity absent substance abuse. (Ex B20E) Dr. Verma opined that the claimant was either seriously limited or unable to meet competitive standards in almost all areas addressed. She noted supporting factors such as ending up at wrong places when using public transportation, being disorganized, being unable to prioritize, being very scattered, and having limited finances. Several of these would only be discernible based on the claimant's allegations. There is no record that the doctor ever rode the bus with the claimant. She also opined that the claimant would be expected to experience decompensation if subjected to increased mental demands. (Ex B20F)
>
> [Plaintiff's attorney] also submitted a deposition of Dr. Verma from December 4, 2013 to supplement the functional capacity assessment (Ex B21F). She stated that she had previously declined to offer an opinion due to the lack of sufficient proof and time of abstinence and sobriety. She acknowledged that the claimant had more recently tested negative on three successive drug screenings over the past couple months. This despite the claimant's testimony of ongoing, twice

>    monthly marijuana use. *Apparently forgetting that she had initially diagnosed a cognitive impairment before recognizing the ongoing but denied substance abuse, Dr. Verma stated that she initially felt the claimant suffered mainly from substance abuse but as she remains sober she has come to understand she has a cognitive disorder.* She resisted giving an opinion before at least six months of proven abstinence, bit [sic] nevertheless opined that if she was abstinent for as long as 12 months, she would not be capable of full time work, but maybe part time work. She summarized her opinion as being that without substance abuse, at her baseline, the claimant "is not the best".
>
>    I cannot give Dr. Verma's opinions much weight, given her reluctance to offer them, her equivocation, and the degree to which they contrast with the record.

PageID.50 (emphasis added).

As an initial matter, there appear to be unresolved factual issues with respect to the extent of plaintiff's substance abuse. At the administrative hearing held on October 4, 2013, plaintiff gave the inconclusive testimony that she "could have" last used cocaine six months prior to the hearing, but could not remember, along with the more straightforward testimony that she continues to use marijuana "[m]aybe twice a month." PageID.81. This somewhat vague testimony is not necessarily inconsistent with Dr. Verma's December 4, 2013 statement that plaintiff tested negative on drug screens since October 4, 2013 (i.e., the administrative hearing). PageID.769.

In addition, while the ALJ discounted Dr. Verma's opinions due to "the degree to which they contrast with the record," he did not elaborate by identifying portions of the record which failed to support the doctor's opinion and or discuss the degree to which the doctor's opinion was not supported. In this regard, while the ALJ observed that plaintiff's case management notes "indicated she was doing better, with only mild symptoms, but she had been failing to have requested lab work done. (Ex Bl0F)," he did not elaborate on those records, which are lengthy (37 page). PageID.534-558, 560-571.

On the other hand, the ALJ noted the doctor's reluctance to give an opinion regarding plaintiff's mental status in December 2013. The doctor stated that ideally she would like to base her opinion upon a record of "six months or a year of sobriety," which was not the case here. PageID.770. Despite this proviso, the doctor ultimately gave an opinion that plaintiff was not "capable of working fulltime now or after a year of sobriety." *Id.*

The ALJ also noted an apparent discrepancy between the doctor's opinions. In her opinion given on October 4, 2013 (the date of the hearing), the doctor stated that plaintiff "has significant issues with cognition, mood instability and substance abuse issues to self-medicate her problem" and that plaintiff "has limited cognitive capacity compounded by her mental illness & co-morbid drug problems." PageID.627. However, on December 4, 2013, the doctor appeared to change her opinion by stating "I initially thought [plaintiff] had a lot of issues because of her drug use, but I have seen her now sober for the past two months and she does have significant cognitive issues to begin with." PageID.769.

Viewing the record as a whole, the Court concludes that the ALJ did not give good reasons for the weight assigned to Dr. Verma's opinions. It appears that Dr. Verma may, by her own admission, have given a premature opinion regarding the interrelationship between plaintiff's cognitive limitations and her drug abuse. While the ALJ noted this problem and the doctor's reluctance to give an opinion, he did not provide sufficient detail to explain how these opinions were inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375; *Wilson*, 378 F.3d at 545. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Verma's opinions.

>    D.  **The ALJ's residual functional capacity (RFC) findings are otherwise not supported by substantial evidence under 20 C.F.R. §§ 416.920 and 416.945, and SSR 98-6p.**

Plaintiff contends that the RFC determination is not supported by substantial evidence because it did not sufficiently acknowledge the limitations that plaintiff's psychological symptoms would cause if she was attempting substantial gainful activity on a full time basis. Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff's RFC was determined by reviewing all of the medical evidence, including Dr. Verma's opinions. As discussed, *infra*, this matter is being remanded for a re-evaluation of those opinions. Addressing the issue of plaintiff's RFC prior to the re-evaluation would serve no purpose. Accordingly, plaintiff's claim of error will be denied. However, on remand, if appropriate, the Commissioner should make any changes to plaintiff's RFC consistent with the re-evaluation of Dr. Verma's opinions.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to (1)

re-evaluate Dr. Verma's opinions from October and December 2013; and, (2) if appropriate, change plaintiff's RFC consistent with that re-evaluation. A judgment consistent with this opinion will be issued forthwith.


Dated:  September 27, 2016           /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge